854

**MICHIGAN TRAVEL SERVICE, INC., a Michigan corporation, d/b/a Wonderland Travel Service, Plaintiff,**

v.

**SCANDINAVIAN AIRLINES SYSTEM, INC., Defendant.**

Civ. A. No. 119.

United States District Court
E. D. Michigan S. D.
at Flint.

May 6, 1966.

Herbert J. Booth, Winegarden, Booth & Ricker, Flint, Mich., for plaintiff.

Laurence D. Smith, Schmidt, Smith, Howlett & Halliday, Grand Rapids, Mich., for defendant.

STEPHEN J. ROTH, District Judge.

Plaintiff, a Michigan corporation, is engaged in the arrangement and sale of travel services and accommodations and operates what is commonly known as a travel agency in the City of Flint, Michigan, and was an appointed agent of defendant for booking of air travel. Defendant, a New York corporation, is an international air carrier operating in many countries of the world and providing trans-Atlantic service from the United States to various European countries. Defendant is an airline member of the International Air Transport Association (hereafter referred to as IATA), and plaintiff is an IATA-approved Passenger Sales Agent.

In the fall of 1963, Dr. Matherne, of the Mott Foundation of Flint, Michigan, undertook to form a travel group to be drawn from Board of Education employees, students of the Flint Community College, and the Mott Foundation Adult Education Program, and their families.

In October 1963, Mr. Stafford Brown, District Sales Manager of defendant, Mr. Chester Corey, Sales Representative of defendant, Dr. Matherne, group travel organizer, and Mr. James F. Smith, President of plaintiff, met to work out travel arrangements. A trip in 1963, which had been taken by tourists from the same group, was discussed in detail; and reference was made to a special supplement to the Flint Journal, a local daily newspaper of general circulation, which contained a complete list of adult education courses and included a boxed reference to the proposed group trip.

The parties hereto entered into an agreement whereby defendant undertook to transport members of the travel group at an agreed price. It is not disputed that those who applied for travel and

those who did in fact travel met the requirements of membership in one of the three groups composing the travel group for the prerequisite six months prior to departure time. The evidence indicates that registration for both the Flint Community College and the Mott Adult Education Program occurred in September 1963, and, therefore, before the organizational meeting of the travel group in October 1963.

The parties and the travel group organization agreed to abide by the provisions of IATA Resolution 088N and CAB Tariff #22, which each contain the following language concerning "public solicitation" of prospective travelers:

"Solicitation can be effected only by officials of the Group Travel Organization or members of the group, and is limited to * * * publications intended solely for such members and any other form of solicitation not defined as public solicitation in * * *.

"* * * 'public solicitation' shall be deemed to exist when the group transportation is described, referred to, announced in advertisements or any other writing or by means of public communication whether paid or unpaid, including but not limited to telephone campaigns, radio, telegraph and television, *provided, however, that a statement in public news media, other than advertisement, that could not reasonably be construed as calculated or likely to induce travel as a member of the group and which has not been initiated by the Group Travel Organization, member of the Travel Group, the carrier or an agent or representative of any of them, shall not be considered public solicitation.*" (Emphasis supplied)

The plaintiff paid the amount due defendant in accordance with the agreement between them; but on May 27, 1964, Mr. Smith, of plaintiff, was notified that the trip was canceled. It is defendant's claim that the cancellation was brought about and required by reason of three specific violations of "solicitation" rules; and that these consisted of the Mott Catalogue (Flint Journal Supplement) of January 5, 1964, and Flint Journal articles of May 10, 1964, and May 20, 1964. Unable to otherwise resolve the differences between the parties respecting the alleged violative "solicitations," the plaintiff remitted in the amount of $11,861.21 as demanded by defendant—paying then the full fares instead of the "travel group" fares. Plaintiff seeks recovery of that amount, together with a loss of profit of $350.00, alleged to have come about through cancellations brought about by defendant's refusal to abide by the original fare agreement; and plaintiff also seeks damages to reputation.

The crux of the issue before the Court is that of "public solicitation" in violation of the rules and regulations, and the agreement of the parties. The matter of the newspaper articles gives us but slight pause, as neither plaintiff nor the travel group organization initiated, sought or, for that matter, even appear to have anticipated the two items. The travel plans of the group were public knowledge and available for treatment and use by the newspaper, and there is no evidence to connect either group or plaintiff with either article complained of. As for the Mott Catalogue (it appears that the newspaper supplement served the same purpose as a college catalogue), it was paid for by the Mott Foundation, sponsor of the Mott Adult Education Program, one of the sub-groups of the travel group, and distributed by the Flint Journal as a public service. It appears that this was a reasonable method to employ to communicate with students of so large a group—some 70,000 persons—a communication not directed to, and little taken note of by those not interested in the education program. It should be noted that this "catalogue" appeared on January 5, 1964, some days after the trip eligibility cut-off date of December 18, 1963.

The Court finds that there was no public solicitation by plaintiff or the travel group within the meaning of the CAB Tariff or IATA Resolution.

The complaint upon which defendant says it acted appears by accident to have been a rather fortuitous one, coming as it did at the peak of the season for such trips as that planned here, when seats admittedly were at a premium. The decision by defendant to require the payment of regular fares can be characterized as a snap or arbitrary judgment unwarranted by the circumstances. The complaint or complaints of violation have never been pursued to a determination or conclusion; and it appears to the Court, in attempting to honor its obligations, the defendant could have required the payment and escrowing of the additional payment, whose disposition could have been directed following full inquiry and final decision on the complaint or complaints.

The Court concludes that the defendant breached its contract by requiring the additional payment, and this without proper cause or justification. Accordingly, plaintiff may have judgment in the amount of $12,111.21, representing the overpayment and five cancellations at $50.00 loss of profit each, together with interest at the rate of five per cent from the date of payment, and costs. There is no showing of any damage to reputation. A judgment order may be submitted.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.